# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 06 CR 539-4 |
| | ) |
| CURTIS STEWART, | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Curtis Stewart's ("Stewart") motion to suppress. For the reasons stated below, we deny the motion to suppress.

## BACKGROUND

Stewart argues that his *Miranda* rights were violated and that his confession was involuntary. He requests that the court suppress as evidence any oral and written statements or admissions alleged to have been made by Stewart. Stewart was arrested on August 10, 2006, based on a valid local arrest warrant and taken to an interview room where he was questioned by Federal Bureau of Investigations agents. During an evidentiary hearing on June 24, 2008, on the motion to suppress, the Government presented the testimony of Special Agent Dennaris Coleman and Special Agent Thomas Weber, both Special Agents with the Federal Bureau of

1

Investigations ("FBI Agents").  The FBI Agents testified that Stewart was advised of his *Miranda* rights, that Stewart signed a written "Advice of Rights" ("Advice of Rights Form"), and that the FBI Agents signed their names as witnesses to Stewart's signature.  Stewart argues that the Advice of Rights Form contained seven lines listing his rights and that he only initialed five of those lines and did not initial the two lines relating to his right to talk to a lawyer or the right to have a lawyer during questioning.  Stewart does not deny that he signed the Advice of Rights Form.  The FBI Agents testified that Stewart was advised of his *Miranda* rights, that Stewart did not ask to talk to a lawyer before questioning, that they do not know why Stewart did not initial two of the lines on the Advice of Rights Form, and that Stewart signed the Advice of Rights Form and answered their questions voluntarily.  In addition, the FBI Agents testified that had Stewart indicated his desire to talk to a lawyer, the questioning would have stopped immediately.

## DISCUSSION

Pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966) and its progeny, "an accused subject to custodial interrogation must be informed of the right to consult with an attorney and to have that counsel present during questioning." *United States v. Lee*, 413 F.3d 622, 625 (7th Cir. 2005).  If an accused individual invokes his right

to counsel, "he 'is not subject to further interrogation until counsel has been made available to him, unless the accused himself initiates further communication.'" *Id.* (quoting in part *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)).

The evidence reflects that Stewart was advised of his *Miranda* rights. Stewart concedes that he was advised of his *Miranda* rights orally while being transported and that he signed the Advice of Rights Form. Stewart, however, argues that the fact that he did not initial two of the lines relating to his rights should have raised red flags. Stewart's argument is without merit. There is no question that Stewart understood his rights and read the Advice of Rights Form. Even though Stewart did not initial two of the lines on the Advice of Rights Form, he signed his name below the following sentence: "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." Stewart then proceeded to answer the questions of the FBI Agents voluntarily. Therefore, based on the evidence presented, we find that Stewart was properly provided with his *Miranda* rights.

Stewart also argues that his *Miranda* rights were violated when at one or more times during the questioning, he told the FBI Agents that he wanted to "use the telephone to call [his] father to call [his] lawyer, Tommy Brewer," but he was told that he could use the telephone after the interview was completed. The FBI Agents

testified that they recalled Stewart asking them if he could use the telephone to call his father, but the FBI Agents also testified that at no time did Stewart indicate that he wanted to contact his father in order to call a lawyer. The FBI Agents testified that Stewart did not indicate why he wanted to call his father and that they told Stewart that he could use the telephone after the interview was concluded. The FBI Agents further testified that had Stewart asked to talk to a lawyer or mentioned any lawyer, the interview would have terminated. We find the FBI Agents' testimony to be credible. The evidence reflects that the FBI Agents properly advised Stewart of his *Miranda* rights, that Stewart waived his *Miranda* rights, that the questioning of Stewart was proper, and that Stewart did not unambiguously request to talk to an attorney.

Stewart also argues that his statements were involuntary. Stewart argues that during his questioning, he told the FBI Agents he wanted to "use the telephone to call [his] father to call [his] lawyer, Tommy Brewer," but he was told that he could use the telephone after the interview was completed and he signed a statement ("Stewart's Statement"). Stewart then signed a statement, admitting to his involvement with bank robberies. If a defendant asserts that a confession was involuntary, "[t]he government bears the burden of proving voluntariness by a preponderance of the evidence." *United States v. Taylor*, 31 F.3d 459, 463 (7th Cir.

1994). A confession is deemed a voluntary confession "'if, in the totality of the circumstances, it is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.'" *United States v. Ross*, 510 F.3d 702, 709 (7th Cir. 2007)(quoting *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001). In assessing whether a confession was voluntary a court should consider factors such as: "the defendant's age, intelligence, education, mental state; whether he was given his *Miranda* rights; the duration and environment of the interrogation, including the suspect's access to the restroom and food during the interrogation; and the conduct of law enforcement." 510 F.3d at 709-10.

     The FBI Agents testified that they advised Stewart of his *Miranda* rights. Stewart understood his rights and signed an Advice of Rights Form and that Stewart voluntarily made statements without a lawyer. As indicated earlier in this opinion, the FBI Agents testified that they recalled Stewart asking them if he could use the telephone to call his father, but the FBI Agents also testified that at no time did Stewart indicate that he wanted to contact his father in order to call a lawyer. The FBI Agents testified that Stewart did not indicate why he wanted to call his father and that they told Stewart that he could use the telephone after the interview was concluded. The FBI Agents further testified that Stewart exhibited a pleasant

demeanor during his interview, that the interview was conducted in a comfortable room, that the interview took less than two hours, and that the interview was non-confrontational. The FBI Agents testified that Stewart's Statement was handwritten by Agent Coleman and was dictated by Stewart. Stewart's Statement started with the following: "My name is Curtis Stewart. I make these statements on my own free will. The following statements detail the events that lead up to, occurred and immediately followed bank robberies that occurred on 7-25-2006." Stewart's Statement concluded with the following: "This statement was written by Special Agent Dennaris T. Coleman of the FBI and read by me. I affirm the above statements are true and correct." Stewart's Statement then has Stewart's signature and a date of August 10, 2006, and Stewart's initials at various lines.

Stewart argued that to his recollection, he asked to call his father to talk to his lawyer and that, based on the totality of the circumstances with experienced agents the inference is there that Stewart informed the FBI Agents that he wanted to talk to a lawyer and that the interview should have stopped. Stewart argues that he signed Stewart's Statement because he thought that he would be allowed to talk to a lawyer after he signed the statement. The Government argued that Stewart never requested to talk to a lawyer and that there is not sufficient evidence to show that Stewart's Statement was obtained by coercion. The Government argued: (1) that Stewart was

properly given his *Miranda* rights, (2) that Stewart is not of an age where he is particularly susceptible to coercion, (3) that testimony of the FBI Agents indicates that Stewart was of a sound mental status and was not particularly susceptible to coercion in that respect, (4) that the duration of the questioning was less than two hours, (5) that based on the testimony of the FBI Agents, the nature of the questioning was pleasant and cordial, (6) that Stewart was not subject to any punishment or deprivation, and (7) that the length of Stewart's detention was quite short and conducted in a comfortable room. Based on all these factors, the Government argued that Stewart's Statement was voluntary. We agree with the Government. The FBI Agents credibly testified that Stewart asked to use the telephone to call his father but did not indicate that he wanted to talk to a lawyer. Therefore, the FBI Agents' response to Stewart that he could use the telephone after the interview was proper and was not coercion. Based on the circumstances and the totality of the evidence we find that the Government has met its burden of showing that Stewart's statements were voluntary. Therefore, we deny Stewart's motion to suppress.

## CONCLUSION

Based on the foregoing analysis, we deny Stewart's motion to suppress.

_Samuel Der-Yeghiayan_
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 24, 2008